UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLOS ALBERTO PEDROZO
ECHEVARRIA,

      Petitioner,

v.                                        Case No.  2:26-cv-1127-JES-DNF

WARDEN, KROME SERVICE
PROCESSING, et al.,

      Respondents.
_____/

## OPINION AND ORDER

Petitioner Carlos Alberto Pedrozo Echevarria, an immigration detainee currently held at Florida Soft Side South Detention Facility, initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Doc. 1).  Respondents have filed a response and a supplemental response to the petition. (Doc. 7; Doc. 20).  Upon review of the parties' filings, the Court finds that a reply is unnecessary and that the petition must be granted.

## I.  Background

Pedrozo Echevarria, a citizen of Cuba, entered the United States on May 25, 1980 as a refugee on the Mariel Boatlift.  (Doc. 7 at 2).  In the decades since, he has been convicted of criminal activity including shoplifting, possession of a controlled substance, and promotion of a sexual performance by a child under

sixteen years of age.  (Id.)  On September 25, 2007, an immigration judge ordered Pedrozo Echevarria removed from the United States. (Id. at 3).  On January 12, 2008, Petitioner was released on an order of supervision.  (Id.)  On June 15, 2017, Pedrozo Echevarria was arrested for failing to register as a sex offender.  (Id. at 4).   However, the charge was dropped, and he was once again released on an order of supervision.  (Id.)

On October 30, 2025, Pedrozo Echevarria was taken into the custody of Immigration and Customs Enforcement (ICE) for the purpose of executing his removal order.  (Doc. 7 at 4).  On May 7, 2026, he was served with a notice of removal to Mexico, which he refused to sign.  (Doc. 20-1 at 10).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days."  Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).   The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Pedrozo Echevarria argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-

2

order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.  In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. at 700-01 (2001).  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  Id. at 699.  The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]."  Id. at 701.  So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id.  If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise.  Id.[1]

Here, there is no dispute that Pedrozo Echevarria has been in ICE custody for more than six months following his latest

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months.  See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

detention. Respondents contend that Pedrozo Echevarria is not entitled to release from immigration custody because he has actively prevented his removal. (Doc. 20-1 at 10).

Title 8 U.S.C. § 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh, 945 F.3d at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

4

Here, Respondents do not show that Pedrozo Echevarria's actions implicated § 1231(a)(1)(C). They offer the declaration of Deportation Officer Kristian Estrada who asserts that Pedrozo Echevarria has not signed a notice of removal to Mexico and—without any further explanation—that Pedrozo Echevarria has "prevented his removal from the United States by failing to comply to lawful commands." (Doc. 20-1 at 10). Notably, while Respondents argue that Pedrozo Echevarria "holds the keys to his freedom in his pocket by complying with removal to Mexico" (Doc. 20 at 6), they do not allege that Mexico has actually agreed to accept him or that ICE even had an approved plan for removal to Mexico that Pedrozo Echevarria thwarted in some way. Further, assuming that Mexico was willing to accept Pedrozo Echevarria (notwithstanding his criminal record), Officer Estrada does not explain why ICE could not or did not thereafter seek travel documents or otherwise plan for his removal to Mexico in a different way, such as a charter flight. In fact, Respondents provide no evidence suggesting that ICE actually communicated with Mexico specifically regarding Pedrozo Echevarria. Nor do Respondents claim that necessary travel documents have been sought—let alone obtained—for any country. Without more, the Court cannot find that Pedrozo Echevarria's actions have prevented his removal and reset Zadvydas' 180-day clock. The Court's confidence in Pedrozo

Echevarria's foreseeable removal to Mexico is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there, which Respondents admit they do not have.  See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").

In short, Respondents present no evidence showing any significant steps taken to remove Pedrozo Echevarria to Cuba or another country.  Thus, based on the evidence, or lack thereof, the Court finds that Respondents do not show a significant likelihood that he will be removed in the reasonably foreseeable future.  Respondents have had almost 19 years—and more than six months since his present detention—to remove Pedrozo Echevarria and are still unable to articulate a specific plan for his removal to any country.  And while there may be some possibility that Mexico will eventually accept Pedrozo Echevarria, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*."  Arenado-Borges, 2025 WL 3687518,

at *4 (emphasis added, quotations omitted).  "[T]he Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process." Romero v. Noem, No. 2:26-cv-352-KCD-NPM, 2026 WL 820499, at * 3) (M.D. Fla. May 25, 2026) (citing Zadvydas, 533 U.S. at 679).

Therefore, Pedrozo Echevarria is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision.  If he fails to comply with the conditions of release, Pedrozo Echevarria may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Pedrozo Echevarria to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.   Carlos Alberto Pedrozo Echevarria's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

7

2.    Respondents shall release Pedrozo Echevarria within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 16, 2026.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

8